UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| SEAN DEMANUELE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:23-CV-519 RLW |
| | ) | |
| CITY OF ST. LOUIS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM AND ORDER

This matter is before the Court on Defendant City of St. Louis's Motion to Dismiss (ECF No. 22), as well as Defendants Andrew Kelley and Anthony Coll's Motion to Dismiss (ECF No. 24). The motions have been fully briefed and are ready for disposition. For the reasons set forth below, the Court will grant the motions to dismiss.

### Background

On April 21, 2023, Plaintiff Sean DeManuele filed this 42 U.S.C. § 1983 action against the City of St. Louis ("City"), Joseph Schmitt, William Olsten, Andrew Kelley, and Anthony Coll. At all relevant times, the named individuals were employed by the St. Louis Police Department as police officers. (ECF No. 1). In his Complaint, Plaintiff alleges the following in connection with an incident that occurred between him and the individual defendants on April 27, 2018, at approximately 1:15 a.m.

Plaintiff was in his vehicle in the parking lot outside of Bomber O'Brien's Sports Bar & Grill (the "Bar"), where his girlfriend worked. *Id.* at ¶ 8. The individual defendants were "off duty, not in uniform, and had just walked out of [the Bar] when they decided to check out Plaintiff's vehicle." *Id.* at ¶ 9. "The individual defendants approached Plaintiff's car and

1

opened his door without identifying who they were or the purpose of doing so." *Id.* at ¶ 10. Plaintiff, in fear for his safety, exited his vehicle, with his firearm in hand. *Id.* at ¶ 11. After Schmitt, Kelley, and Coll saw the firearm, they walked away from Plaintiff, but Olsten grabbed Plaintiff and forced him to the ground. *Id.* at ¶ 12. A struggle ensued between Plaintiff and Olsten, during which Plaintiff's gun discharged two bullets into Olsten, wounding him. *Id.* Plaintiff then ran from the scene with his gun in hand. *Id.* at ¶ 13. Schmitt then shot Plaintiff multiple times as he ran away, causing serious injuries. *Id.* at ¶ 14.

Plaintiff asserts claims of illegal search and seizure against all the individual defendants, excessive force against Schmitt and Olsten, and deliberate indifference to policies, practices, customs, training, and supervision under the Fourth and Fourteenth Amendments against the City.[1]  *Id.* at 3-8. Plaintiff also generally asserts that the individual defendants were "acting on color of law at all times relevant." *Id.* at 4, 5.

On October 11, 2023, Defendant City moved for dismissal of Plaintiff's claims against it pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 22). Defendant City argues that Plaintiff's claims fail because the individual defendants were not acting under color of law during the alleged seizure and assault of Plaintiff, and that Plaintiff has failed to allege sufficient facts to support a claim of municipal liability under either *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) (policy or custom), or *City of Canton v. Harris*, 489 U.S. 378 (1989) (failure to train). (ECF No. 23). The same day, Defendants Kelley and Coll moved for dismissal under Rule 12(b)(6), similarly arguing that Plaintiff's claims failed because the individual defendants were not acting under color of law, and because Plaintiff failed to allege

---

[1] In his response to Defendant City's motion to dismiss, Plaintiff indicates his intent to abandon any official-capacity claims.

2

personal involvement by Kelley and Coll.  (ECF Nos. 24, 25).[2]  Both Schmitt and Olsten have answered the complaint.  (ECF Nos. 19, 44).  As relevant, Olsten admits in his Answer that he acted under the color of state law during the incident in question.  (ECF No. 19).

## Legal Standard

A complaint must be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted if the complaint fails to plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level…"  *Id.* at 555.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Courts must liberally construe the complaint in the light most favorable to the plaintiff and accept the factual allegations as true.  *See Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008) (stating that in a motion to dismiss, courts accept as true all factual allegations in the complaint); *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008) (explaining that courts should liberally construe the complaint in the light most favorable to the plaintiff).

However, "[w]here the allegations show on the face of the complaint there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate."  *Benton v. Merrill Lynch*

---

[2]  Movants further argue that Plaintiff's claims are time-barred because he made no sincere effort to commence his suit until after the limitations period expired.  (ECF Nos. 23, 25).  Both motions to dismiss cite *Emanuel v. Richards*, 426 S.W.2d 716, 718 (Mo. Ct. App. 1968) (filing of petition and issuance of summons is but conditional halting of statute of limitations, and unless plaintiff thereafter exercises due diligence in obtaining service of process, statute continues to run).  This judicially-created qualification has been limitedly applied, and the Court does not find its application appropriate here.  The Court also finds unpersuasive Kelley and Coll's argument that Plaintiff's service was untimely, given the Court granted Plaintiff an extension of time to effectuate service, which he complied with.

*& Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008) (citation omitted). Courts "'are not bound to accept as true legal conclusion couched as factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). When considering a motion to dismiss, a court can "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679.

## Discussion

Section 1983 imposes liability on any person who, acting "under color of any statute, ordinance, regulation, custom, or usage, of any State" causes a deprivation of a federally-secured right. 42 U.S.C. § 1983; *see also West v. Atkins*, 487 U.S. 42, 48 (1988). "The essential elements of a § 1983 claim are (1) that the defendant(s) acted under color of state law and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right." *Schmidt v. City of Bella Villa*, 557 F.3d 564, 571 (8th Cir. 2009) (citation omitted). The Court will first address the issue of whether the Complaint plausibly alleges that Kelley and Coll were acting under the color of law.

### A. *Defendants Kelley and Coll*

The Eighth Circuit has established that "under 'color' of law means under 'pretense' of law." *Roe v. Humke*, 128 F.3d 1213, 1216 (8th Cir. 1997) (quoting *Screws v. United States*, 325 U.S. 91, 111 (1945)). The color of state law element requires that the defendant "exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Roe*, 128 F.3d at 1215 (quoting *West*, 487 U.S. at 49). "Thus acts of officers in the ambit of their personal pursuits are plainly excluded." *Id.* at 1216 (internal quotation omitted). "Absent any actual or purported relationship between the officer's conduct

4

and his duties as a police officer, the officer cannot be acting under the color of state law." *Id.* (citations omitted).

"'[W]hether a police officer is acting under color of state law turns on the nature and circumstances of the officer's conduct and the relationship of that conduct to the performance of his official duties.'" *Id.* (quoting *Martinez v. Colon*, 54 F.3d 980, 986 (1st Cir. 1995)). Factors to consider include "whether an officer was on duty and in uniform, the motivation behind the officer's actions, whether the officer had access to the victim because of his position, and whether the officer threated official conduct in the future." *Magee v. Trustees of Hamline Univ., Minn.*, 747 F.3d 532, 535 (8th Cir. 2014) (citing *Ramirez-Peyro v. Holder*, 574 F.3d 893, 900 (8th Cir. 2009)).

Viewing Plaintiff's allegations in light of the relevant factors, there is no discernable connection here between Kelley and Coll's conduct and their official duties as a police officers. The individual defendants were off duty and not in uniform. Plaintiff observed them exit the Bar and enter the parking lot, which was accessible to the public. From the time they approached Plaintiff's vehicle to aftermath of the altercation between Plaintiff and Olsten, the individual defendants did not identify themselves as police officers, did not display their badges, and did not state any intent or purpose that would suggest they were law enforcement. Moreover, Plaintiff makes no allegation that at any relevant time he perceived the individual defendants to be law enforcement officials.

Plaintiff argues that his knowledge of whether or not the individual defendants were police officers is not dispositive, citing *Mahaffy v. Kroll*, No. 08-CV-4992 (JMR/SRN), 2010 WL 3385222 (D. Minn. Aug. 24, 2010), and *Gomez v. Galman*, 18 F.4th 769 (5th Cir. 2021). (ECF No. 30). In *Mahaffy*, there was a genuine issue of fact as to whether two off-duty police

officers acted under the color of law in physically confronting the plaintiff, where they had later revealed their intent to give the plaintiff a citation for damaging their vehicle.  *Mahaffy*, 2010 WL 3385222 at *5-8.  In *Gomez*, the plaintiff plausibly alleged an off-duty police officer acted under the color of law where the officer had purportedly forced him to the ground in a way that was commensurate with how the officer would normally take down a suspect and apprehend them with a police hold, causing him to believe he was being arrested.  *Gomez*, 18 F.4th at 776-77.  Plaintiff suggests that similar to *Mahaffy* and *Gomez*, the individual defendants' intentions during the incident and the manner in which Olsten forced him to the ground are relevant.  Plaintiff points to Olsten's admission in his Answer that he acted under the color of state law during the incident.  Plaintiff states additional discovery is required to ascertain the intentions of all the individual defendants.  Plaintiff further likens Olsten's conduct in forcing him to the ground as commensurate with how Olsten would have taken down a suspect while on duty.

While Plaintiff is correct that his knowledge of whether or not the individual defendants were police officers is not dispositive, Plaintiff's claims against Kelley and Coll are nevertheless distinguishable from those in *Mahaffy* and *Gomez*.  Plaintiff's Complaint is silent as to the individual defendants' intentions during the incident, and the Court will not impart onto Kelley and Coll Olsten's unexplained admission in his Answer that he acted under the color of state law.  In addition, Plaintiff makes no allegation that, prior to displaying his firearm, he did anything suspicious or illegal to which Kelley and Coll could have responded in their official capacities as police officers.  As to the physical altercation, Plaintiff does not allege in his Complaint that the manner in which Olsten forced Plaintiff to the ground was commensurate with law enforcement protocol and caused him to believe he was being arrested.  On the contrary, Plaintiff's

allegations that he remained armed and that an altercation ensued between he and Olsten suggest Plaintiff did not believe he was being arrested. *Cf. Gomez*, 18 F.4th at 776 ("The fact that Gomez stopped and exited his vehicle at his attackers' commands lends significant credence to his allegation that he believed them to be police officers, because the complaint offers no reason for Gomez to obey [the off-duty officers] unless they were acting by virtue of state authority."). Furthermore, Plaintiff does not specifically allege how Kelley and Coll were personally involved in the purported search and seizure.

Here, the facts alleged do not support a reasonable inference that under the circumstances Kelley and Coll "exercised power possessed by virtue of state law" and made possible only because they were "clothed with the authority of state law." *Roe*, 128 F.3d at 1215. Plaintiff has also failed to adequately allege personal involvement by Kelley and Coll. See *White v. Jackson*, 865 F.3d 1064, 1081 (8th Cir. 2017) ("To prevail on a § 1983 claim, a plaintiff must show each individual defendant's personal involvement in the alleged violation."). The Court therefore finds Plaintiff's claims against Kelley and Coll fail as a matter of law.

B. *Defendant City of St. Louis*

In his Complaint, Plaintiff generally asserts: "[Defendant City] and its policymaking officials, employees, agents, and representatives have developed and maintained long-standing, department-wide customs, policies, procedures, and practices, and/or failed to properly train and/or supervise its officers in a manner amounting to deliberate indifference to the constitutional rights of Plaintiff." (ECF No. 1 at 8). The Court construes Plaintiff's allegations as asserting claims against Defendant City under the frameworks of *Monell* and *City of Canton*.

Under *Monell*, "the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the

7

Constitution." 436 U.S. at 690. A local government cannot be held liable under section 1983 for an injury inflicted solely by its employees or agents on a *respondeat superior* theory. *Id.* at 691. In *Monell*, and subsequent cases, the Supreme Court has "required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 403 (1997) (citations omitted). "[A] 'policy' is an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters," while a custom can be shown through evidence of the "existence of a continuing, widespread, persistent pattern" of conduct by the governmental entity's employees. *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999).

Under *City of Canton*, a local government may be subject to liability under section 1983 for "inadequate training of its employees where (1) the city's training practices were inadequate; (2) the city was deliberately indifferent to the rights of others in adopting them, such that the failure reflects a deliberate or conscious choice by the city; and (3) an alleged deficiency in the training procedures actually caused the plaintiff's injury." *Parrish v. Ball*, 594 F.3d 993, 997 (8th Cir. 2010) (cleaned up). "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (internal quotation omitted).

Defendants argue that Plaintiff's Complaint is devoid of factual allegations to support an inference that either a policy or custom of the City or the City's failure to train caused the alleged constitutional violations. (ECF No. 23). In response, Plaintiff maintains that he "needs additional information from discovery to plead a pattern of similar constitutional violations by untrained employees as further support for his failure to train theory, as well as prior similar

8

incidents regarding other City of St. Louis police officers custom and practice." (ECF No. 31 at 1-2).

The Court agrees with Defendant City that Plaintiff has failed to plead a facially plausible claim of municipal liability against it.[3] *See* Fed. R. Civ. P. 8 (pleading standard); *Iqbal*, 556 U.S. at 678 (factual content of plaintiff's allegations must allow court to draw reasonable inference that defendant is liable for misconduct alleged; complaint does not suffice if it tenders naked assertions devoid of further factual enhancement). In view of the foregoing, the Court will dismiss Plaintiff's claims against Defendants City, Kelley, and Coll.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant City of St. Louis's Motion to Dismiss (ECF No. 22) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants Andrew Kelley and Anthony Coll's Motion to Dismiss (ECF No. 24) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's claims against Defendants City of St. Louis, Andrew Kelley, and Anthony Coll are **DISMISSED with prejudice**.

*Ronnie L. White*
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this   3rd   day of May, 2024.

---

[3] Plaintiff states that he seeks leave to file an amended complaint upon conducting further discovery. Plaintiff's request for leave to amend does not comply with the Local Rules, *see* L.R. 4.07 (proposed amendment to pleading or amended pleading itself must be submitted at the time any motion for leave to amend any pleading is filed), and that Plaintiff is not entitled to discovery prior to filing a pleading in compliance with Rules 8 and 11, Fed. R. Civ. P.